## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JAMES E. DANIELS, JR.                                                                    PETITIONER

v.                                      No. 5:14CV00134 JLH-JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                                        RESPONDENT

### AMENDED OPINION AND ORDER

This is a habeas case brought by James E. Daniels, Jr., pursuant to 28 U.S.C. § 2254.

Daniels was convicted in the Circuit Court of Drew County, Arkansas, on one count of possession

of marijuana with intent to deliver and one count of possession of methamphetamine with intent to

deliver.  He was sentenced to a total of 65 years.  On direct appeal, he argued, first, that the circuit

court abused its discretion in denying his request for a continuance to give him time to hire private

counsel to replace his public defender and, second, that the evidence was insufficient to support the

conviction for possession of methamphetamine with intent to deliver.  After the Arkansas Court of

Appeals affirmed, Daniels filed a motion for post-conviction relief pursuant to Rule 37 of the

Arkansas Rules of Criminal Procedure, reiterating his argument that the trial court erred in refusing

to grant him a continuance to give him time to hire private counsel to replace the public defender,

asserting that the circuit judge was biased against him, and arguing that the public defender was

ineffective on several grounds.  The circuit judge denied the Rule 37 motion, and the Arkansas

Supreme Court affirmed.  On the issue of whether Daniels was denied his right to counsel, the

Arkansas Supreme Court held in part that the previous decision by the Arkansas Court of Appeals

was the law of the case and therefore did not address that issue on the merits.

Daniels' present petition asserts two grounds for relief.  First, Daniels argues that the denial

of his motion for continuance violated his right to counsel of choice as guaranteed by the sixth and

fourteenth amendments.  Second, Daniels argues that the public defender who represented him at trial was ineffective.  The magistrate judge to whom this case was assigned has recommended that the Court find in favor of Daniels and grant his habeas petition on the question of whether he was denied his sixth amendment right to counsel.  Document #17.  He also recommended that the Court deny Daniels' claim that the public defender who represented him at trial was ineffective.  *Id*.  The State of Arkansas has objected to the magistrate judge's recommendation that the Court find in favor of Daniels on his claim that he was denied his right to counsel.  Document #20.  Neither party has objected to the recommendation that the Court deny Daniels' claim that the public defender who represented him was ineffective.  The Court adopts the recommendation by the magistrate judge that Daniels' claim of ineffective assistance of counsel be denied.  For reasons that will be explained, the Court declines to adopt the recommendation that the circuit judge violated Daniels' sixth amendment right to counsel.  Daniels' petition will be denied.

## I.  THE HISTORY OF THE CASE

### A.      The Arrest

According to his testimony at trial, Daniels was a drug dealer living in Little Rock on August 26, 2010, when he received a call from a regular customer from south Arkansas seeking to purchase methamphetamine and marijuana.  Document #16 at 232, 244.  Daniels' father had died two days earlier, so he initially declined to accommodate that customer, but the customer persisted.  *Id*. at 232-33.  Daniels did not have what the customer requested, but he eventually relented and called another drug dealer, Justin Jones, who agreed to sell methamphetamine to Daniels' customer.  *Id*. at 234.  Jones' car was "running hot," so Daniels agreed to transport Jones to south Arkansas to deliver the methamphetamine.  Daniels also made arrangements to purchase marijuana for resale to the south Arkansas customer.  *Id*. at 235.  Daniels picked up Jones, obtained the marijuana, and

proceeded to drive toward south Arkansas, with his wife, Tinya Sterling, as a passenger in the front seat, while Sterling's daughter and Jones were passengers in the backseat. *Id*. at 218, 228.

When they reached south Arkansas, the route toward the rendezvous destination took them along County Road 133 in Drew County. *Id*. at 120, 160-61. Unbeknownst to Daniels, drug task force officers had obtained a search warrant for his vehicle, and an officer activated the blue lights behind him. *Id*. at 116-17, 160-61, 236. Daniels was preparing to stop, when Jones said to him, "Don't stop, man. We've got to get rid of this dope." *Id*. at 236-37. Jones dropped the dope in between the cupholder and the seat. *Id*. Another police car approached from the opposite direction and stopped. *Id*. at 120-21, 162. Daniels attempted to flee and in that attempt struck the door of the police car that had stopped in front of him, causing that door to strike an officer named Jason Akers. *Id*. at 123-24, 141, 152, 239. After a short chase, Daniels stopped and was arrested. Bags containing marijuana and methamphetamine were found in or along the road. *Id*. at 126, 129-31, 152-53, 367. In a written statement, Daniels said that he threw the methamphetamine out of the car. *Id*. at 383. Jones passed it up to him because the windows adjacent to the rear seat did not function. *Id*. Daniels' wife testified that she threw the marijuana out of the car. *Id*. at 219. Daniels testified, however, that he threw the marijuana out of the car. *Id*. at 231-32.

## B.   Overview of the Procedural History Leading to Daniels' Conviction

On August 27, 2010, Daniels had his initial appearance in the District Court of Desha County. Document #16 at 9. He was found to be indigent and Sandra Bradshaw, a public defender, was appointed to represent him. *Id*. The court set Daniels' bond at $1,000,000, but he was already in custody for a parole violation.

On September 14, 2010, a Criminal Information was filed in Drew County Circuit Court charging Daniels with: (1) possession of methamphetamine with intent to deliver; (2) possession of

3

marijuana with intent to deliver; (3) first degree child endangerment; and (4) attempted first degree battery on Officer Akers.  Document #16 at 7-8.  The adult occupants of Daniels' vehicle, Jones and Sterling, were charged as co-defendants.  *Id*. at 7.   Jones was charged with possession of methamphetamine with intent to deliver and possession of marijuana with intent to deliver.  *Id*. Sterling was charged with possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver and the offense of first degree child endangerment.  *Id*.  She entered a guilty plea.  *Id*. at 220.  Jones could not make his $500,000 bond, so he remained in custody as a pretrial detainee.

At trial, Daniels admitted that he possessed marijuana with intent to deliver.  *Id*. at 230-31. He denied the remaining charges.  *Id*. at 241.  At the close of all of the evidence, the judge directed a verdict on the charge of first degree child endangerment.  Document #16 at 259.  The jury found Daniels not guilty on the battery charge but guilty of possession of marijuana with intent to deliver and possession of methamphetamine with intent to deliver.  *Id*. at 280.  In the bifurcated sentencing phase, the jury fixed Daniels' sentence to be 15 years on the possession of marijuana charge and 50 years on the methamphetamine charge, recommending that the two terms run consecutively.  *Id*. at 312.

With this overview having been presented, the Court will review in more detail the events relevant to Daniels' claim that the circuit judge violated the sixth amendment by denying his request for a continuance.

## C.      The October 12, 2010 Plea and Arraignment

On October 12, 2010, Daniels and his two co-defendants made their first appearances in Drew County Circuit Court.  The circuit judge first took up the issue of the appropriate bond for Jones.  As noted above, Jones' bond was set at $500,000.  Document #16 at 57.  The judge

recognized that the bond was "set way too high" and began asking questions relevant to the issue of what would be a reasonable bond for Jones. *Id*. at 58-59. Jones' lawyer requested a bond of $10,000. *Id*. at 60. The State wanted a higher bond. *Id*. at 62. The judge asked Jones' mother whether she had a thousand dollars in cash available,[1] and she said that she did not have that much money but could try to get it. *Id*. In that context, the judge stated:

> THE COURT:   I'm going to put the bond at this point at 75,000. If you come up with enough maybe to make a fifty thousand one, I may take a look at it again, but – Because a bail bondsman will come back with your head over fifty thousand. But 75,000 right now. The best thing I can do is to fast track this. How long have you been in jail?
>
> MR. JUSTIN JONES:   A month and a half.
>
> THE COURT:   The best thing I can do is fast track this case to a conclusion and get a trial. Because if he can't make the bond – If Daniels can't make the bond and so on, then I don't want them sitting in jail unnecessarily. Why don't we fast track it? Why don't we set it for trial? And I need for you to – I don't know if you've got any motions to file, but why couldn't we try it – Well, we'll try it on the week of December 14th.

*Id*. at 62-63. Thus, immediately after setting Jones' bond at $75,000, the judge recognized that Jones probably could not make that bond, mentioned the prospect that Daniels might not be able to make bond, stated that the best thing to do was to fast-track the case, and set the case for trial during the week of December 14.

The judge then said:

> THE COURT:   Now, with respect to Mr. Daniels, what have you got?
>
> MS. BRADSHAW:   Your Honor, he has a parole hold on him.
>
> THE COURT:   It doesn't matter then.

---

[1] The question is apparently based on the assumption that a $10,000 bond could be purchased for $1,000.

*Id*. at 63.

After that comment, the judge turned back to Jones and questioned whether he was on parole

or probation.  *Id*.  After learning that Jones was on supervised probation in a court in Pine Bluff,

Arkansas, the judge noted that the court in Pine Bluff could revoke Jones' probation before

December 14.  *Id*. at 64.  The prosecutor then reported that he believed that the court in Pine Bluff

would revoke Jones, and the court replied:

> THE COURT:   My point is he could be gone from here and you'd bring him
> back here for trial.  And if he's gone from here then it's going to be easier for you
> to work out a plea bargain (unintelligible) this at the same time as the other one.  I'm
> not telling you to use that one as leverage, but that's what they would do.  I would
> ask you-all to come up with a plea bargain and give it to Ms. Bradshaw.

*Id*. at 64-65.

Bradshaw then raised the issue of whether the court could do anything regarding Daniels:

> MS. BRADSHAW:    Judge, is there anything you can do – Mr. Daniels is
> awaiting bed space in ADC, and who knows how long that would go – so that we
> don't have all these transportation issues?
>
> THE COURT:    You know, if I were the State, I'd make a plea offer today.
> I'd put it in writing.  I'd hand it to you in two minutes.  I'd check with Mr. Carr,[2]
> I'd say, Let's make a deal and let's not bring this guy back down here from the
> department of corrections and make the sheriff's office run up there and get him.  I'd
> make him one he would take and I'd be done with the case in two minutes and
> prepare the paperwork today.  Whether they do that or not, I don't know.  But they
> have a range of punishment; they know what kind of case they've got against him.
> It'd work just like that, that fast.  And with respect to – And that would save a
> transport order, it would save you from coming back to court.

*Id*. at 65-66.

---

[2] Mr. Carr apparently was the case agent.

After a recess, Bradshaw reported that the State had made a plea offer of 80 years, the judge asked Daniels "yes or no?" and Daniels responded, "No." *Id*. at 67.  Then the following colloquy occurred:

> THE COURT:    Very well.  And we've got it set for trial –
>
> MS. ROSEGRANT:    December 14th.
>
> THE COURT:    – December 14th.  He's about to go back to ADC.  Do a transport order, bring him back on – Yes, sir?
>
> MR. JAMES DANIELS:    Sir, will I have an opportunity to have my parents to get –
>
> THE COURT:    An opportunity to, what?
>
> MR. JAMES DANIELS:    To get paid counsel.
>
> THE COURT:    Well, you've got paid counsel – the State's paying her – and you've got a very good lawyer.  But, obviously, she's not fighting to stay on the case if you – If you retain counsel, either you or someone on your behalf, certainly you have the right to select counsel.  However, that right is limited with respect to when this case is tried, and I will not allow new counsel coming on to cause a continuance.
>
> MR. JAMES DANIELS:    Well, I'm not saying anything about her –
>
> THE COURT:    Well, I know you're not.  I know you're not.  She's excellent.  But if they can find one that –
>
> MS. BRADSHAW:    A real lawyer, Judge, is what he's –
>
> THE COURT:    But you just tell them if you bring new counsel on the case, I will not continue it on that account simply because they've come on the case and are not prepared.  The case will be tried in December regardless.  That's what I mean.  So if they're going to do it, they have to do it now.
>
> MR. JAMES DANIELS:    Yes, sir.

*Id*. at 68-69.

In summary, at the plea and arraignment, the judge began by recognizing that the bond that had been set for Jones was excessive, making appropriate inquiries relevant to the issue of what

would be a reasonable bond for Jones, recognizing that Jones probably would not be able to post a bond in the amount that the judge determined to be reasonable, and concluding based on that discussion that the best course would be to fast-track the case.  The judge then announced that he would set the case for trial during the week of December 14.

After this discussion, resulting in the decision to fast-track the case and set it for trial on December 14 due to Jones' situation, the judge turned his attention to Daniels' situation.  The judge learned from Bradshaw that Daniels had a parole hold on him, and said, "It doesn't matter then." He apparently recognized that because of the parole hold Daniels would not be posting bond and that the sense of urgency in setting a trial for Jones did not apply to Daniels.  After some further discussion regarding Jones, Bradshaw raised the issue of Daniels awaiting bed space at the ADC and asked the judge if there was anything that he could do so that she did not have to address the transportation issues.  In response, the judge suggested that the prosecutor make a plea offer that day, which would save a transport order.  A recess was taken, the prosecutor made a plea offer, Daniels rejected the plea offer, and the proceedings resumed in open court.

Contrary to Daniels' argument, the judge did not, so far as the record shows, participate in the plea negotiations.  In response to a request from Bradshaw, "is there anything you can do" regarding the transportation issues that would ensue when Daniels went to the ADC, he suggested that the prosecutor make a plea offer, but he did not make any suggestion as to what the plea offer would be, nor did he make any suggestion to Daniels as to what Daniels' response to that plea offer should be.

After Daniels reported to the judge that he had declined the plea offer, the judge directed that a transport order be prepared to bring Daniels back from the ADC for trial on December 14.  Daniels asked the judge whether his parents would have the opportunity to get paid counsel.  After noting

that Daniels had a good lawyer being paid by the State, the judge responded, "obviously, she's not

fighting to stay on the case" and expressly acknowledged to Daniels, "you have the right to select

counsel." The judge warned Daniels, however, that his policy was not to grant a continuance based

on the fact that a defendant had hired a new lawyer. Shortly after the plea and arraignment, the

judge entered an order and stated, in pertinent part: "Defendant advised the Court he may retain

private counsel. The Court gave notice to Defendant that if new counsel is retained no continuances

would be granted." *Id.* at 13.

**D.     The November 15, 2010 Omnibus Hearing**

The court conducted an omnibus hearing, in preparation for trial, on November 15, 2010.

Jones appeared with his lawyer, Leonard, while Daniels appeared with Bradshaw. An attorney

named Dale West also was present. After establishing that Leonard represented Jones, the following

occurred:

> THE COURT:    . . . . Ms. Bradshaw represents Mr. Daniels?
>
> MS. BRADSHAW:    Yes.
>
> MR. DALE WEST:    Your Honor, may I speak?
>
> THE COURT:    Let her get her answer out then certainly you can speak.
>
> MS. BRADSHAW:    As the attorney of record, I was of the understanding that he was going to hire private counsel.
>
> THE COURT:    And that's fine. I just wanted to know do you currently represent Mr. Daniels. All right. And I'm going to make a decision on the substitution of counsel. You don't want on the case?
>
> MR. WEST:    Judge, may I speak, please?

Document #16 at 71. There is some question regarding whom the judge was addressing when he

asked, "You don't want on the case?" It would be odd to pose that question to Bradshaw since she

was already on the case.  On the other hand, the question comes in the context of comments by the

court that were directed to Bradshaw, and West apparently did not interpret the question as directed

to him because rather than answering the question, he requested permission to speak.

> After being given permission to speak, West explained:
>
> > MR. WEST:   Judge, his mother came by and gave me one thousand dollars, which I put in my client trust account with the understanding that I would talk to Jason Akers before I would do any representation here.  I have just – Just before I came in this courtroom, I have spoken with Jason Akers and I'm going to take the thousand dollars of which I have put in my trust account, and give back to his mother.
> >
> > THE COURT:   You don't want the case then?
> >
> > MR. WEST:   I don't want the case.
> >
> > THE COURT:   I understand.  That's fine.
> >
> > MR. WEST:   Thank you.
> >
> > THE COURT:   I had a feeling we'd probably end up with Ms. Bradshaw one way or another because if the case were set for trial, and if you needed time, I always tell them to hire the lawyer in time to be ready for trial; or, secondly, the lawyer has to abide by the original trial date because you have a lot come in and switch lawyers at the last minute and want a continuance.

*Id*. at 71-72.

Bradshaw then moved for a continuance, stating that she had expected Daniels to hire private

counsel and that she would not be ready for trial in December.  *Id*. at 72.  The court asked whether

the case was simple, whether there would be a need for a suppression hearing and other questions

designed to ascertain whether the case could be ready for trial by December 14.  *Id*. at 73-74.  After

determining that the case was relatively simple and that there probably would not be need for a

suppression hearing, the court denied the motion for a continuance.  *Id*. at 74.

The court then asked Daniels if he was in the penitentiary for something else, and Daniels reported that he was in the penitentiary for a parole violation.  Document #16 at 74.  The judge asked whether a plea offer had been made and was reminded that an offer of 80 years had previously been made.  *Id*.  When the judge asked how many convictions Daniels had, Bradshaw responded, "His mother has the financial wherewithal to hire an attorney."  *Id*. at 75.  The judge relied, "I know, but that doesn't count.  I can't count that.  They've got one of the best lawyers in the district free, why would they go hire someone else?"  *Id*.  After some further questions about who would be called as witnesses, the court set the trial date for December 15.  *Id*. at 75-76.

Leonard then moved for a severance, asking that his client, Jones, be tried separately from Daniels.  The judge denied that motion.  *Id*. at 76.

Daniels then addressed the court and the following colloquy occurred:

> MR. JAMES DANIELS:   Your Honor, nothing against Ms. Bradshaw, but it seems like I would be able to get some more time[.]
> * * *
> Me and my family was under the impression when I came to court on the 12th – You told me I would have to immediately hire counsel.  I hired counsel – My parents hired counsel two days later.  We was under the impression the whole time up until today – We never got any word from Mr. West that he wasn't going to accept the case until just right now.
>
> THE COURT:   Are you talking about the 12th of, what?
>
> MR. JAMES DANIELS:   October.  My parents hired him on, like, the 14th of October.  He agreed.  He never told us –
>
> THE COURT:   I'm trying to hear you.  They contacted him on October 14th?
>
> MR. JAMES DANIELS:   Yes, sir.  My first appearance was on the 12th.

*Id*. at 77-78.

The court then turned to West and questioned him regarding what Daniels had said.  *Id*. at 78.  West stated that the understanding he had with Daniels' parents was that he would talk to Jason

Akers, a personal friend, before agreeing to the representation. *Id*. He had not been able to get in

touch with Akers until November 15, just before the proceedings began. *Id*. The judge responded:

> THE COURT:   I understand that. What he's saying is I should give him more time because it's not been his fault – He's been – Your inaction, we'll put it that way, has accrued to his detriment because you didn't promptly get back to them with your decision not to take the case and that this Court, therefore, must postpone not one, but two cases, because of your inaction. So, I need to consider that. And I should find because cases are very important – Ones in jail, I have to give priority to those. If I continue it, do I have reason to exclude time? I didn't think any more of it after you first came up, but then when he asked to address the Court and says, Look, he's held our money since October 14th and promised to get back to us, and it's been thirty days and we just now find out today – And the reason you said you didn't take it is because you hadn't had a chance to talk to Jason Akers and he's, you know, right around the corner from both of us. I have to take that into account.

*Id*. at 79-80. After more back and forth about Akers' relationship to the case and to West, the court

stated that the case still seemed to be a simple one factually, and he was going to leave it on the trial

docket for December. *Id*. at 82.

Later in the proceeding, Bradshaw pointed out that Daniels was in the Brickeys Unit[3] and

that the Thanksgiving holidays were coming up. *Id*. at 84. The court turned to Leonard and asked

whether he had a problem with letting Jones sit in jail for another month, until January, "Because

I'm going to try y'all together." *Id*. Leonard then requested a reduction in Jones' bond, which the

court declined. *Id*. The court then turned to Bradshaw and stated:

> THE COURT:   Ms. Bradshaw, (unintelligible) to your client and so on. The thing is, do not come back to this Court with an allegation that you have hired private counsel, all right, unless that agreement is in writing and that lawyer knows that he or she is going to go to trial – When's the first date? January, what?

> MS. ROSEGRANT:   February 8th is the next trial date.

---

[3] The Brickeys Unit, also known as the East Arkansas Regional Unit, of the Arkansas Department of Correction is in Lee County, approximately two and a half hours from Monticello, Arkansas, where the court proceedings were being conducted.

*Id*. at 84-85.   Bradshaw responded that Daniels intended to point the finger at Jones, and said that

that would create a problem if the case was tried together.   *Id*. at 85.   Jones then renewed his request

for a severance, which the court denied.   *Id*. at 85-86.   The judge stated, "I'm not even going to go

into the reason," but then explained, giving appropriate reasons why he would not grant a severance.

*Id*. at 86.   The judge then stated:

> THE COURT:     . . . . You know, Ms. Rosegrant reminds me this is a
> February trial date.   This other gentleman that you represent, Mr. Leonard, has been
> in jail since August.   To try this matter in February, it would be wrong.   I will give
> Ms. Bradshaw a break of one day, but we'll try it on the 16th then so she doesn't
> have to stay the night.   That's the best I can do, Ms. Bradshaw.
>
> MS. BRADSHAW:   That's fine.   Thank you.
>
> THE COURT:   If I had an early January trial date, but mercy – or if this man
> were at liberty, that'd be one thing – But we're going to get it tried in December and
> – You know, maybe Mr. Green will have a little mercy on you, Mr. Leonard, and
> offer you a little less than forty years and your man will take it and then that'll be
> that.

*Id*. at 86-87.   That was the conclusion of the omnibus hearing.

Several points about this hearing should be made.   According to Daniels, he and his parents

had understood since October 14 that West would be representing him.   West, however, stated that

he never agreed to take the case, that he informed Daniels' parents from the beginning that he

needed to speak to Akers before he would agree to take the case, and that he had been unable to

reach Akers until November 15.   Jones requested a severance, which was denied.   Bradshaw stated

that she could not be ready for trial by mid-December and moved for a continuance.   Jones did not

join in the motion for a continuance.   The judge asked questions designed to determine whether the

case could be prepared for trial by mid-December and concluded that it could be.   The judge then

asked about the next date that the case could be tried and learned that he did not have a January date

available, so the next date would be sometime in February.   At the conclusion of the omnibus

hearing, the judge returned to the continuance issue and stated that because Jones had been in jail since his arrest in August, it would be wrong to postpone the trial until February.  The judge indicated that he might have granted a continuance if an early January date had been available or if Jones were not detained ("[i]f I had an early January trial date, but mercy – or if this man were at liberty"), but stated that since Jones was detained and no date in early January was available, the case needed to be tried in December.  He then continued the case one day, to December 16.

## E.       The December 10, 2010 Motion for Continuance

On December 10, 2010, six days before trial, Bradshaw filed a motion for continuance and for a mental evaluation on behalf of Daniels.  Document #17 at 52-54.[4]  In that motion, Bradshaw sought a continuance, pointing out that Daniels had repeatedly asked the court for time to hire a private attorney, stating that Daniels and his family believed that they had hired West until the pretrial hearing on November 15, pointing out that Daniels was incarcerated on a parole revocation and would be for some time, so there was no harm in a continuance, pointing out that the case was recently filed and easily could be tried within the one-year speedy trial limit,[5] and asserting that Daniels was suffering from mental issues and needed a mental evaluation.  Document #17 at 52-53.  The State's response pointed out that Daniels had had approximately 100 days to notify his attorney

---

[4] This motion apparently was not included in the record presented to the Arkansas Court of Appeals on direct appeal.  *See* Document #17 at 24 n.20.  The response by the State of Arkansas was included in the record, Document #16 at 14-15, and that response accurately stated the grounds on which Daniels sought a continuance.  Therefore, the fact that Daniels had filed the motion on December 10 and the grounds for that motion were before the Arkansas Court of Appeals.

[5] The Arkansas Rules of Criminal Procedure provide that a criminal defendant generally must be tried within twelve months from the date of arrest, after excluding periods of "necessary delay." *See* Ark. R. Crim. P. 28.1 and 28.2.  They also provide that defendants like Daniels and Jones, who cannot make bail and remain incarcerated as pretrial detainees, "shall be released on [their] own recognizance if not brought to trial within nine (9) months [from the date of their arrest]." *See* Ark. R. Crim. P. 28.1(a).

14

of his mental illness and had not done so, and that he had been prosecuted four times since 2005 and had never requested a mental evaluation.  Document #16 at 14-15.  The State also asserted that Daniels' motion for continuance to hire his own attorney was made for the purpose of delay and argued that the fact that he was incarcerated in the Arkansas Department of Correction was of no importance to the trial setting.  *Id*.  The court denied the continuance without comment.  *Id*. at 21.

Jones was not mentioned either in the motion or in the response.  So as far as the record shows, Jones was still detained on December 10, 2010, and his case had not been severed from that of Daniels.

## F.      Proceedings on the Day of Trial

In pretrial proceedings on the morning of trial, Bradshaw renewed the motion for continuance.

> MS. BRADSHAW:   . . . . I want to renew my motion for continuance.  Mr. Daniels has, as of November 15th, believed that he had private counsel; and until Mr. West informed the Court that he would be refunding that.  He has a constitutional right to an attorney of his choosing, and he's only had a month now and hasn't had ample time, so I would renew that motion.

> THE COURT:    Well, this case has been pending – Well, the information was filed on September the 14th and Mr. West, as I recall, never entered an appearance and we've got to give priority to these cases where they are in jail and – So, motion denied.

Document #16 at 89-90.  The situation with respect to Jones was not mentioned either by Bradshaw or the judge in this brief colloquy, unless the judge was referring to Jones when he said, "we've got to give priority to these cases where they are in jail."  Otherwise, Jones was never mentioned during the pretrial proceedings.  The record does not show that Jones had entered a guilty plea or that his case had been severed from Daniels' case.  Nevertheless, the trial began with Daniels as the only defendant at trial.

During his opening statement, the prosecutor mentioned that Jones might testify. *Id*. at 105. In her opening statement, Bradshaw said:

> MS. BRADSHAW:   . . . . The evidence will also be that Justin Jones never gave a statement that day.  He has not opened his mouth until yesterday when he provided the State with a statement of what his anticipated testimony would be, which we believe will be contrary to what really happened on this day.  And you will have to be the judge of his credibility and the judge of his motives, why the day before this trial he has suddenly decided to become the State's witness.

*Id*. at 109-10.

The State did not call Jones in its case-in-chief.  After the State rested, Bradshaw announced that she intended to call Jones to establish that Jones had pled guilty to possession of methamphetamine with intent to deliver, which would be evidence that Daniels did not possess it. *Id*. at 199.  Jones' lawyer was present, and he reported that no plea agreement had been reached. *Id*. at 202.  The court stated that he intended to let Bradshaw call Jones to testify as to what happened that day.  *Id*.  After further discussion, Jones' lawyer informed the court that he was advising Jones to invoke his fifth amendment privilege against self-incrimination. *Id*. at 207.  Jones was never called to testify.  Apart from the indication that Jones had given a statement on the day before trial, the record does not disclose why Jones was not tried with Daniels.

## G.    The Arkansas Court of Appeals Decision

The Arkansas Court of Appeals addressed the continuance issue in five paragraphs, which are set out in their entirety:

> Daniels also argues that the trial court erred in denying his request for a continuance, which he wanted in order to hire his own private defense counsel.  Whether to grant a continuance is left to the sound discretion of the trial court that will not be overturned in the absence of an abuse of that discretion resulting in prejudice that amounts to a denial of justice. *Price v. State*, 2009 Ark. App. 664, 344 S.W.3d 678. A defendant has a constitutionally protected right to counsel, but that right is not absolute and may not be used to frustrate the inherent power of a court to command an orderly, efficient, and effective administration of justice.  *Id*.  Once a defendant

has competent counsel, the court must balance the delay in changing counsel with the public's interest in prompt dispensation of justice. *Id*. If a change would result in a postponement because of new counsel's need to prepare, the court may consider the reasons for the change, whether counsel has been identified, whether the defendant acted diligently in seeking a change, and whether denial will likely result in prejudice to the defendant. *Id*. Lack of diligence alone may be sufficient to deny the request for a continuance. *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999). One cannot use the right to counsel as a sword, manipulated to delay trial or to play cat-and-mouse with the court. *Wilson v. State*, 88 Ark. App. 158, 196 S.W.3d 511 (2004).

The chronology of events is important for this discussion. Daniels was arrested on August 26, 2010. Daniels appeared in court on August 27, 2010, where he was declared indigent and appointed a public defender, Sandra Bradshaw. Bradshaw filed a formal entry of appearance on September 23, 2010. Ms. Bradshaw also filed a formal waiver of arraignment for Daniels, entered a not-guilty plea, and demanded a jury trial. At his next appearance on October 12, 2010, Daniels was present with Bradshaw when he asked the trial judge if his parents could hire a private attorney for him. The trial judge responded that Daniels had the right to do so, but that if he retained counsel, "I will not allow new counsel to cause a continuance" from the December 14, 2010 trial date. Daniels replied, "Yes, sir."

The parties reconvened on November 15, 2010, and Bradshaw was present on behalf of Daniels. An attorney named Dale West was present as well. West told the trial judge that although he had accepted a $1000 retainer from Daniels's mother, he was returning the money because he did not want to accept the case. West never entered an appearance in the case. Bradshaw then asked for a continuance of the December trial date because she was not ready. The trial judge denied the request for a continuance. Daniels then stated to the trial judge that he had "nothing against Ms. Bradshaw," but his parents hired West shortly after the October hearing, and he would suffer due to West's delay in deciding to turn down his case. The trial judge took that into consideration but decided not to grant a continuance because the facts of the case were relatively simple, the trial setting was important to a codefendant in jail awaiting trial, and Bradshaw was a good attorney. The trial judge moved the trial to December 16 for Bradshaw but remarked that this was "the best I can do." Bradshaw replied, "That's fine. Thank you."

On Thursday, December 16, 2010, the parties appeared for trial. Bradshaw renewed her motion for a continuance, but the trial court denied it. Bradshaw informed the trial court that Daniels rejected a plea offer against her advice. She also stated to the trial court that Daniels admittedly possessed the marijuana, but he was fighting the other charges. Trial proceeded. The trial judge directed a verdict on one count, the jury acquitted Daniels on another count, and he was convicted of the two drug-related offenses.

We hold that the trial judge did not abuse his discretion and that Daniels failed to demonstrate prejudice amounting to a denial of justice. Daniels identified no new attorney he desired to retain, attempted to retain, or who was willing to be retained, in the month prior to trial. Daniels was represented at all times by a public defender whose qualifications were never questioned, and the trial judge made clear from the outset that no continuance would be granted on the basis of a change of attorneys. Bradshaw successfully defended Daniels on two of the four criminal charges tried that day. Of the two convictions, one crime was admitted by Daniels prior to the beginning of trial. We affirm the trial court's discretionary decision to deny Daniels a continuance.

*Daniels v. State* (*Daniels I*), 2012 Ark. App. 9 at 4-7, 2012 WL 11276 at 2-3.

## H.    The Arkansas Supreme Court Decision

After the Arkansas Court of Appeals affirmed on direct appeal, Daniels filed a motion for post-trial relief under Rule 37 of the Arkansas Rules of Criminal Procedure. In that motion, he argued, among other things, that the circuit judge violated his right to counsel by denying his requests for a continuance. The circuit judge denied the Rule 37 motion, and Daniels appealed. On the issue of whether the circuit judge violated Daniels' right to select counsel of his choice by denying his motions for continuance, the Arkansas Supreme Court stated:

> Appellant raised the claim concerning the trial court's failure to grant his motion for a continuance to obtain counsel of his choice on direct appeal, and the court of appeals addressed it. *Daniels*, 2012 Ark. App. 9, at 4-7. Erroneous deprivation of the right to counsel of choice is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). A trial court, however, has wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar. *Id*. The court of appeals held that the trial court did not abuse its discretion in denying a continuance, concluding that there was no erroneous deprivation of the right to counsel of choice. *Daniels*, 2012 Ark. App. 9, at 4-7. The issue has been raised in a prior appeal and the conclusion of the court of appeals on the matter is law-of-the-case for all subsequent proceedings. *See State v. Harrison*, 2012 Ark. 198, __ S.W.3d __ (discussing application of the doctrine where the merits of the claim have previously been addressed and the claim was adjudicated); *Croy v. State*, 2011 Ark. 284, 383 S.W.3d 367 (per curiam).

*Daniels v. State* (*Daniels II*), 2013 Ark. 208 at 3, 2013 WL 2149901 at 4.

18

## II.  THE LAW AND ITS APPLICATION TO THIS CASE

### A.  The Right to Counsel

The sixth amendment states: "In all criminal prosecutions, the defendant shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. AMEND. 6;  *Powell v. Alabama*, 287 U.S. 45, 66, 53 S. Ct. 55, 63, 77 L. Ed. 158 (1932).  The United States Supreme Court has held "that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006); (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697, 100 L. Ed. 2d 140 (1988)).  "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25, 109 S. Ct. 2646, 2652, 105 L. Ed. 2d 528 (1989).

The right to counsel of one's choice, however, "is circumscribed in several important respects."  *Wheat*, 486 U.S. at 159, 108 S. Ct. at 1697.  A defendant's "right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice."  *United States v. Vallery* 108 F.3d 155, 157 (8th Cir. 1997).  "'[T]rial courts are vested with broad discretion in matters of continuances' for the purpose of substituting counsel."  *United States v. Cordy*, 560 F.3d 808, 815 (8th Cir. 2009) (quoting *United States v. Larson*, 760 F.2d 852, 856 (8th Cir. 1985)).  "While the Sixth Amendment affords some protection to the defendant's choice of counsel, when that choice comes into conflict with a trial judge's discretionary power to deny a continuance, the court will apply a balancing test to determine if the trial judge acted fairly and reasonably."  *United States v. Kikumura*, 947 F.2d 72, 78 (3rd Cir. 1991).

**B.     The Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") embodies the principle that the sovereignty of state courts must be respected.  AEDPA limits situations in which it is appropriate for a federal court to disturb the decision of a state court.  Codified at 28 U.S.C. § 2254(d), AEDPA reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State prisoners must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Burt v. Titlow*, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (internal quotations omitted).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).  Daniels raised the right to counsel of choice on direct appeal and the court of appeals addressed it on the merits, holding "that the trial judge did not abuse his discretion [in denying Daniels' motion for a continuance] and that Daniels failed to demonstrate prejudice amounting to a denial of justice."  *Daniels I*, 2012 Ark. App. 9 at 6, 2012 WL 11276 at 3.  When Daniels raised the issue in his Rule 37 proceedings, the Arkansas Supreme Court recognized that denial of a defendant's right to counsel of his choice is a structural error and then held that the doctrine of the law of the case barred reconsideration of whether the trial judge abused his discretion in denying Daniels' motion for a continuance.  *Daniels II*, 2013 Ark. 208 at 6-7, 2013 WL 2149901 at 4 (stating that "the conclusion of the court of appeals

on the matter is law-of-the-case for all subsequent proceedings."). "When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication." *Cone v. Bell*, 556 U.S. 449, 467, 129 S. Ct. 1769, 1781, 173 L. Ed. 2d 701 (2009). Therefore, the Court will "look through" the Arkansas Supreme Court's summary denial of Daniels' right to counsel of choice claim and evaluate the Arkansas Court of Appeals's reasoned decision holding that the circuit court judge did not abuse his discretion in denying Daniels' motion for a continuance. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2276, 192 L. Ed. 2d 356 (2015).

Daniels maintains that the Arkansas Court of Appeals should not have affirmed the circuit court's decision to refuse a continuance because that refusal deprived him of his sixth amendment right to counsel of his choice. His argument runs into a double layer of deference. First, the Arkansas appellate courts, like most if not all appellate courts, review the denial of a continuance under an abuse of discretion standard.[6] Second, as noted above, AEDPA requires this Court to accord a significant level of deference to the decision of the Arkansas Court of Appeals. These layers of deference set the bar high, requiring Daniels to show that the court of appeals' decision was an "extreme malfunction" in Arkansas's criminal justice system. *See Harrington*, 562 U.S. at 102, 131 S. Ct. 770 at 786.

---

[6] "Whether to grant a continuance is left to the sound discretion of the trial court that will not be overturned in the absence of an abuse of discretion resulting in prejudice that amounts to a denial of justice." *Daniels I*, 2012 Ark. App. at 4, 2012 WL 11276 at 2. *Cf. United States v. Moe*, 536 F.3d 825, 831 (8th Cir. 2008) (district courts are afforded broad discretion when ruling on requests for continuances).

**C.     The Determination of the Facts**

Based on a thorough review of the record, the Court concludes that the Arkansas Court of Appeals did not unreasonably determine the facts in light of the evidence before it. The chronology recited by the Arkansas Court of Appeals is substantially accurate.  The court of appeals' opinion failed to mention the December 10 motion for continuance but noted each occasion on which Daniels appeared in court and summarized the discussions relating to the continuance issue.  The court of appeals accurately stated that Daniels never identified a new attorney whom he wished to retain, had attempted to retain, or who was willing to be retained in the month prior to trial; that Daniels was represented by a public defender whose qualifications were never questioned; that the trial judge made clear from the outset that no continuance would be granted on the basis of a change in attorneys; and that the public defender successfully defended Daniels on two of the four criminal charges tried that day.  Although Daniels argues that the decision of the Arkansas Court of Appeals was based on an unreasonable determination of the facts in light of the evidence presented, *see* Document #6 at 5-7, he does not specify any portion of the determination of the facts by the court of appeals that was inaccurate.  Therefore, the issue is whether the decision of the Arkansas Court of Appeals made a decision that was contrary or involved an unreasonable application of clearly established federal law when it held that the circuit court did not abuse its discretion by denying Daniels' motion for a continuance to gain more time to hire counsel to replace the public defender.

**D.     Clearly Established Federal Law**

The Court must determine whether there is clearly established federal law governing the case. *See Greene v. Fisher*, 132 S. Ct. 38, 44, 181 L. Ed. 2d 336 (2011); *Cary v. Musladin*, 549 U.S. 70, 74-77, 127 S. Ct. 649, 653-54, 166 L. Ed. 2d 482 (2006).  Law is "clearly established" when United States Supreme Court precedent "unambiguously provides a 'controlling legal standard.'"

*Blackson v. Rapelje*, 780 F.3d 340, 348 (6th Cir. 2015) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858, 160 L. Ed. 2d 662 (2007)). "'[C]learly established' law should be construed narrowly." *Id*. (citing *Wright v. Van Patten*, 552 U.S. 120, 125, 128 S. Ct. 743, 746, 169 L. Ed. 2d 583 (2008); *Musladin*, 549 U.S. at 76, 127 S. Ct. at 654). However, "[t]hat the standard is stated in general terms does not mean the application was reasonable. AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Panetti*, 551 U.S. at 953, 127 S. Ct. at 2858 (quoting *Musladin*, 549 U.S. at 81, 127 S. Ct. at 656) (Kennedy, J., concurring). "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S. Ct. 1166, 1169, 155 L. Ed. 2d 144 (2003)). "The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner." *Panetti*, 551 U.S. at 953, 127 S. Ct. at 2858. Though circumscribed, the right to counsel of one's choice is clearly established; and it is likewise clearly established that this right may be violated by refusing a continuance.

The Court may look to the Eighth Circuit to determine whether it has already held that the particular issue is clearly established by Supreme Court precedent. *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450-51, 185 L. Ed. 2d 540 (2013). In *Middleton v. Roper*, the Eighth Circuit considered a habeas petition in which the petitioner argued that he was denied his right to effective assistance of counsel and to due process of law when the state trial court refused to grant his request for a continuance of the trial because his attorneys did not have time to prepare. 498 F.3d 812, 815 (8th Cir. 2007). The petitioner argued that the state supreme court unreasonably applied clearly established law. *Id*. at 816. The Eighth Circuit cited *Ungar v. Sarafite* and *Morris v. Slappy* as the

"[t]wo Supreme Court precedents [that] principally govern an accused's constitutional right to a continuance." *Id*.

In *Ungar*, the Court stated: "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." 376 U.S. 575, 589, 84 S. Ct. 841, 850, 11 L. Ed. 2d 921 (1964). The Court held that the trial court's denial of a motion for continuance on the day of the scheduled contempt hearing did not deprive the defendant of due process, even though the defendant's attorney told the court that he was contacted only three days earlier and was unfamiliar with the case. *Id*. at 590, 84 S. Ct. 850.

Then, in *Slappy*, the Court reiterated that "[t]rial judges necessarily require a great deal of latitude in scheduling trials." 461 U.S. at 11, 193 S. Ct. at 1616. "However, a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." *United States v. Rankin*, 779 F.2d 956, 960 (3rd Cir. 1986).[7] "The governing standard for the Sixth Amendment, the Court declared, is that 'only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.'" *Middleton*, 498 F.3d at 817 (quoting *Slappy*, 461 U.S. at 11-12, 103 S. Ct. at 1616). "[T]he constitutional right [to counsel of choice] is probably best stated as a limit on trial court discretion:  that discretion only exceeds its constitutional bounds when it is exercised to deny a

---

[7] In *Rankin*, the trial court refused the defendant's request to continue the trial while his attorney defended a case in state court. 779 F.2d at 960. The defendant's case was the last of a multiple-party case remaining to be tried, denial of the continuance resulted in the inability of the attorney the defendant had chosen as counsel to try the case, and the denial demonstrated a failure by the trial court to respect the "inter-court compact" between state and federal courts. *Id*. The Third Circuit granted the defendant a new trial, holding that the defendant was arbitrarily deprived of the right to select his own counsel. *Id*. at 961.

continuance on the basis of an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable delay." *Sampley v. Attorney Gen. of North Carolina*, 786 F.2d 610, 613 (4th Cir. 1986) (internal quotations omitted).

## E.    Application of Clearly Established Federal Law

Next, the Court must determine whether the Arkansas Court of Appeals's decision was contrary to, or involved an unreasonable application of *Ungar* and *Slappy*.  "Contrary to" and "unreasonable application of" have distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000) (O'Connor, J., concurring).  The Eighth Circuit explained:

> A decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." [*Williams*, 529 U.S.] at 405, 120 S. Ct. 1495. A decision is "an unreasonable application of" clearly established federal law if is clearly erroneous, that is, if no " 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ─── U.S. ───, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

*Armstrong v. Hobbs*, 698 F.3d 1063, 1066 (8th Cir. 2012).  Daniels does not contend that the Arkansas Court of Appeals's decision was contrary to clearly established federal law.  Rather, he contends that the court of appeals unreasonably applied clearly established federal law.  *See* Document #1 at 19.  The Eighth Circuit characterized the applicable clearly established federal law–*Ungar* and *Slappy*–as decisions that "state the governing constitutional rule at a high level of generality.  In applying the deferential standard of AEDPA, '[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Middleton*, 498 F.3d at

817 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2143, 158 L. Ed. 2d 938 (2004)).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410, 120 S. Ct. at 1522. The appellate court's decision stands so long as fairminded jurists could disagree as to whether it was correct and it is the state prisoner's burden to show that fairminded jurists could not disagree. *Harrington*, 562 U.S. at 102, 131 S. Ct. at 786. This standard is difficult to meet, but not impossible. *See id*.

The State of Arkansas concedes that a showing of prejudice[8] is not necessary in order for a defendant to prevail on a claim that he was deprived of counsel of choice. Document #5 at 5 (citing *Gonzalez-Lopez*, 548 U.S. at 146, 126 S. Ct. at 2562). Nevertheless, the State argues, the court of appeals' decision rested on an alternative ground, i.e., that the circuit court did not abuse its discretion, and Daniels cannot prevail unless he shows that the court of appeals' decision was an unreasonable application of clearly established law as to that alternative ground. This reading of the Arkansas Court of Appeals decision is consistent with the opinion of the Arkansas Supreme Court, which recognized that erroneous deprivation of the right to counsel of choice is a structural error before stating that the court of appeals "held that the trial court did not abuse its discretion in denying a continuance, concluding that there was no erroneous deprivation of the right to counsel of choice." *Daniels II*, 2013 Ark. 208 at 3, 2013 WL 2149901 at 4.

---

[8] In fairness to the court of appeals, it should be noted that Daniels raised the issue of prejudice in his brief on appeal. Document #5-4 at 7-9.

There are no "mechanical tests" for deciding when the denial of a continuance is arbitrary or unreasoning. *Ungar*, 376 U.S. at 589, 84 S. Ct. at 850. As stated previously, "[t]he answer must be found in the circumstances present in every case, particularly the reasons presented *to* the trial judge at the time the request is denied" but also the reasons given by the trial judge for denying the request. *Id.*; *United States v. Sellers*, 645 F.3d 830, 835 (7th Cir. 2011). "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and the burden counsels against continuances except for compelling reasons." *Slappy*, 461 U.S. at 12, 103 S. Ct. at 1616.

The Arkansas Court of Appeals failed to cite any federal law, let alone the controlling precedent, *Ungar* and *Slappy*, but "a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d)." *Harrington*, 562 U.S. at 98, 131 S. Ct. at 784. "Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holdings in a prior decision of this Court." *Id.* at 102, 131 S. Ct. at 786.

The record before the court of appeals shows that the most important reason given by the trial judge for denying Daniels' motion for continuance was that a co-defendant, Jones, was incarcerated and could not make bond. As explained above, at the first appearance of the defendants in circuit court, the judge began with Jones, determined that Jones probably could not make bond, decided based on Jones' situation to fast-track the case and set it for the week of December 14, all before turning to Daniels and inquiring about Daniels' situation. Document #16 at 58-63. Daniels' first request for a continuance was made at the November 15 hearing, and again the trial judge emphasized the fact that Jones was incarcerated and could not make bond. ("This other gentleman

. . . has been in jail since August" and "if this man were at liberty, that'd be one thing"). *Id*. at 86-87. Notably, Jones never joined in Daniels' requests for a continuance. As far as the record shows, on December 10 when Bradshaw renewed Daniels' motion for continuance by written motion, Jones was still a co-defendant who was expected to be tried on December 16, and he continued to be a co-defendant expecting to go to trial until the morning that the trial began. Although on December 16 Jones did not actually go to trial, when Daniels' motion for continuance was renewed that morning, prospective jurors and all of the witnesses had already assembled for trial. *Cf. Slappy*, 461 U.S. at 12, 103 S. Ct. at 1616.

Another important consideration cited by the trial judge was control of his docket. He warned Daniels on October 12, when Daniels first raised the issue of hiring counsel to replace the public defender, that his practice was not to grant a continuance when a defendant hired a new lawyer close to trial. Document #16 at 68. He reiterated that concern at the November 15 hearing, when he noted that defendants often switch lawyers at the last minute and want a continuance. *Id*. at 72.

The Arkansas Court of Appeals noted both of these factors: "the trial setting was important to a co-defendant in jail awaiting trial,"[9] *see Daniels I*, 2012 Ark. App. 9 at 6, 2012 WL 11276 at 3; and the right to counsel "may not be used to frustrate the inherent power of a court to command an orderly, efficient, and effective administration of justice." *Id*. at 4, 2012 WL 11276 at 2. Both of these are legitimate reasons for denying a motion for a continuance. *See United States v.*

---

[9] "To permit a continuance to accommodate one defendant may in itself prejudice the right of another defendant whose trial is delayed because of the continuance. Playing to an extreme conclusion, this indiscriminate game of judicial musical chairs could collapse any semblance of sound administration, and work to the ultimate prejudice of many defendants awaiting trial in criminal courts." *Gandy v. State of Alabama*, 569 F.2d 1318, 1323 n.9 (5th Cir. 1978).

*Williams*, 630 F.3d 44, 48 (1st Cir. 2010) (listing "the extent of inconvenience to others if a continuance is granted" as a relevant factor in determining if a continuance should be granted); *Kikumura*, 947 F.2d at 78 (listing "the rights of other defendants awaiting trial who may be prejudiced by a continuance" as a factor courts should consider in determining if a continuance should be granted to allow a defendant to obtain counsel of his choice); *Vallery*, 108 F.3d at 157 ("The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice.").

The court of appeals also noted that lack of diligence alone may be sufficient to deny a request for a continuance under Arkansas law. *Daniels I*, 2012 Ark. App. 9 at 4, 2012 WL 11276 at 2. The Eighth Circuit lists "the diligence of the party requesting the continuance" as one of the five factors a court should balance in ruling on a motion for a continuance, but notes that "no single factor is dispositive." *United States v. Pruett*, 788 F.2d 1395, 1396 (8th Cir. 1986). Ultimately, the court of appeals did not rely on lack of diligence alone, but considered it along with other factors. Daniels was arrested on August 26, 2010, and appeared in district court on August 27, 2010, where the district court declared him indigent and appointed Bradshaw to represent him. Document #16 at 9. When Daniels made his first appearance in circuit court on October 12, 2010, nearly seven weeks had passed since the date of his arrest, and neither he nor his family had made any effort (so far as the record shows) to hire a lawyer to represent him. In the face of this lack of diligence, the trial judge was justifiably concerned that delay in hiring new counsel would result in a request for a continuance.

On November 15, when Daniels appeared for the omnibus hearing, after for a discussion between the judge, West, and Bradshaw, and after the discussion of Jones' motion for severance, Daniels requested more time to obtain a lawyer. He explained that his parents hired West on

October 14.   The trial judge responded, "I'm trying to hear you.   They contacted him on October 14?"   Document #16 at 77-78.   It is apparent from the record that the trial judge was listening to Daniels and took his concern seriously.   He turned to West and questioned West extensively.   *Id.* at 78-82.   While Daniels said that he and his family believed that as of October 14 West had agreed to represent him, West insisted that he had informed Daniels' parents from the beginning that he needed to speak to Akers before agreeing to accept the case.   *Id.* at 78.   The Arkansas courts were entitled to believe West.

Furthermore, the court of appeals correctly noted that in the month before trial Daniels did not identify an attorney who would represent him, which is a valid consideration.[10]   *See United States v. Robinson*, 662 F.3d 1028, 1032 (8th Cir. 2011); *Cordy*, 560 F.3d at 816; *Lankford*, 573 F.2d at 1054; *Urquhart*, 726 F.2d at 1319.   *See also Miller v. Blackletter*, 525 F.3d 890, 896 (9th Cir. 2008) (citing on habeas review the failure to identify a new attorney and the failure to indicate how much time it would take to secure new representation as circumstances supporting a finding that the judge did not act unreasonably or arbitrarily in denying the defendant a continuance).   *But see Riggio v. Secretary of Dep't of Corr.*, 704 F. Supp. 2d 1244, 1252-53 (finding that the trial court arbitrarily insisted upon expediting the petitioner's revocation hearing by denying his motion for a continuance in order to retain private counsel when the petitioner requested only a short delay of

---

[10] Daniels maintains that he and his family contacted an attorney named Willard Proctor, that they identified him to Bradshaw, but that "Daniels had no real opportunity, other than through his own public defender, to 'identify' Mr. Proctor to the trial court." Document #6 at 4.   Daniels alleges that he received a letter from Proctor explaining that he could not take the case, unless he would be granted a continuance.   Document #1 at 23-24 ("Counsel for Daniels is in the process of trying to obtain a copy of this letter and will supplement the record in this case with it if and when it is found.").   This Court will not consider Proctor's refusal to take the case or the letter because federal habeas review of a state-court proceeding is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).   Daniels did not present the letter to the Arkansas courts, nor did he mention Proctor.

three weeks, he identified the attorney who would represent him, and court-appointed counsel made it clear he was not ready to proceed).  Daniels also failed to give the court any indication as to how long it would take for him to secure private counsel.  And on December 16, the day of the trial, when Daniels renewed his motion for a continuance, he gave the circuit court no updated information concerning his search for private counsel.  Document #16 at 89.

In his habeas petition, Daniels criticizes a number of comments made by the trial judge, and he criticizes the court of appeals for failing to mention these comments:

> Finally, the Arkansas Court of Appeals failed to even mention the ridiculous reasons offered by the trial court for refusing to grant a continuance so Daniels could retain counsel (i.e. because the case was "simple," because the only issue in the case would be how much time Daniels would receive, because Daniels already had a good, "paid" public defender, and because he did not want to keep Daniels in custody (even though Daniels would remain in custody on the parole violation, regardless of whether a continuance were granted).

Document #1 at 27.  Daniels did not mention these comments by the trial judge in his brief on appeal, Document #5-4, so it is not clear that he is entitled to raise them in federal court as a basis for concluding that the decision of the court of appeals was an unreasonable application of clearly established law.[11]  Regardless, those arguments do not change the outcome.

By attributing to himself the judge's concerns about defendants remaining in custody pending trial, Daniels inaccurately characterizes the trial judge's comments about fast-tracking the case.  Document #1 at 21.  The trial judge repeatedly commented that he would not continue the case

---

[11] Before seeking federal habeas corpus relief, a petitioner must first fairly present his claims to the appropriate state court, which means that he must have presented to the state courts the same factual grounds and legal theories as he raises in his federal petition.  *Palmer v. Clarke*, 408 F.3d 423, 430 (8th Cir. 2005).  Daniels presented some of these arguments in his Rule 37 petition.  Document #5-7 at 9.  The Arkansas Supreme Court, however, held that Daniels' claim that the denial of his continuance requests denied his right to counsel was barred by the law-of-the-case doctrine.  *Daniels II*, 2013 Ark. 208 at 2, 2013 WL 2149901 at 4.

because Jones was in custody and could not make bail.  As to Daniels, when informed that Daniels had a parole hold, the trial judge commented that "[i]t doesn't matter then," apparently recognizing that the urgency in getting a trial date for Jones did not apply to Daniels.

It is true that, after inquiring of the lawyers, the trial judge concluded that the case was simple and justified his decision not to continue the case in part on that basis.  Document #16 at 82.  It should be noted, however, that at the omnibus hearing Bradshaw moved for a continuance on the ground that she could not be prepared for trial in December, and the judge first asked whether the case was a simple one in response to her motion.  *Id*. at 72-73.  Whether the case was simple or complex was relevant to the trial judge's consideration of Bradshaw's request for a continuance to give her more time to prepare.  *See United States v. Larson*, 760 F.2d 852, 857 (8th Cir. 1985).  Whether the case was simple or complex also was relevant to the issue of whether it was possible for Daniels to retain counsel who could prepare the case for trial in 30 days.  While some cases are so complex that no competent lawyer would be willing to try them on 30 days' notice, some cases are sufficiently simple that they can be prepared for trial in that amount of time.  Daniels says that no lawyer would have accepted his case knowing he had to be prepared for trial in 30 days, but that assertion is not based on any evidence in the record before the court of appeals.   On November 15, Bradshaw said that she had not begun trial preparation because she thought Daniels had hired private counsel; yet, she obviously was prepared for trial 30 days later.   West stated that he had not decided to refuse the case until the morning of November 15 when he finally spoke to Akers; otherwise, he would have accepted Daniels request to represent him, knowing that the case was set for trial in 30 days.

In the context of the discussion of whether the case was simple, the judge commented regarding the drug charges, "By the way the State has presented it . . . [i]t could be a case of how

much, not so much of the guilt issue." *Id.* at 83-84.  Daniels asserts that these comments show that the judge had predetermined his guilt, but that assertion ignores the careful phrasing by the judge – "*By the way the State has presented* it" and it "*could* be a case of how much."  The judge did not prematurely proclaim Daniels to be guilty; rather, while assessing the complexity of the case, he commented on what "could be" based on "the way the State has presented it."[12]

Although the trial judge commented that Bradshaw was paid by the State and was a good lawyer, he also pointed out that she was not fighting to stay on the case and explicitly acknowledged Daniels' right to select and retain counsel. *Id.* at 68.  The judge never said that because Bradshaw was a good lawyer Daniels had no right to select and retain counsel of his choice.

Daniels points out that the trial judge made it clear from the outset that he would not grant a continuance in order to accommodate a new attorney.  Document #24 at 4.  It is true that adhering to a rigid rule that an attorney must "take the case as he finds it" is arbitrary if it is unaccompanied by other reasoned explanations.  *Sellers*, 645 F.3d at 835 ("[A] myopic insistence on proceeding with a scheduled trial date in the fact of a valid request for a continuance is arbitrary and unreasonable").  But in Daniels case, the conversations and circumstances that arose after the trial judge's initial warning that he would not grant a continuance reveal that the trial judge balanced the right to choice of counsel against two legitimate considerations–the inconvenience to Jones and the administration of the docket.  It is reasonable to conclude that the trial judge's insistence on proceeding with the scheduled trial date was not myopic; rather, the trial judge rested his decision to deny a continuance on the importance of the trial setting to Jones, who was in jail waiting to be

---

[12] The fact that a judge makes a preliminary assessment, based on the record, of the weight of evidence against a criminal defendant does not show that the judge is biased.  Indeed, such an assessment is a regular aspect of determining bond.  *See* 18 U.S.C. § 3142(g)(2); Ark. R. Crim. P. 9.2(c)(viii).

tried, and on the need to maintain control of his docket – not, as Daniels argues, on the simplicity of the case, the strength of the evidence, or Bradshaw's competence.

Some of the trial judge's comments may have been ill considered.  Whether they were is not for this Court to decide.  Even if they were, they do not show that the Arkansas Court of Appeals unreasonably applied clearly established federal law when it affirmed the trial court's denial of Daniels' motion for a continuance.

**CONCLUSION**

For the reasons stated, the petition of James E. Daniels, Jr., for writ of habeas corpus is DENIED.  Document #1.  Daniels' motion for bond is DENIED.  Document #25.

Daniels is hereby granted a certificate of appealability on the issue of whether his sixth amendment right to counsel was violated by the trial court's denial of his motion for a continuance.[13]

IT IS SO ORDERED this 19th day of September, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[13] When the district court has rejected a constitutional claim on the merits, to obtain a certificate of appealability the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000).  United States Magistrate Judge J. Thomas Ray, who recommended that the Court grant Daniels' petition for writ of habeas corpus on this issue, is a reasonable jurist.  Opinions vary as to the undersigned.